**Kate BROYLES, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., etc., Defendant.**

**No. CIV-2-78-211.**

United States District Court, E. D. Tennessee, Northeastern Division.

June 26, 1979.

On Motion For Relief From Judgment June 2, 1980.

---

Carleton W. Smith and Jerry W. Laughlin, Greeneville, Tenn., for plaintiff.

John H. Cary, U. S. Atty. by Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for the judicial review of the final decision of the defendant Secretary, 42 U.S.C. § 405(g), denying the plaintiff's claim for disability health insurance benefits under the Social Security Act (Act). 42 U.S.C. §§ 416(i), 423. The defendant moved for a judgment on the pleadings. Rule 12(c), Federal Rules of Civil Procedure.*

The plaintiff filed an application for such benefits on June 29, 1977, alleging that she first became unable to engage in substantial work on the previous June 10, because of high blood-pressure and sugar. That claim was denied initially and on reconsideration. An administrative law judge denied the application also on August 11, 1978 on the basis that the plaintiff did not meet the earnings requirement of the Act and was thus not entitled to benefits. This became the final decision of the defendant Secretary when an appeals council approved it.

The administrative law judge found, *inter alia*:

  *   *   *   *   *   *

2.  The  *   *   *  [plaintiff] received credit for four quarters of coverage in the 1940s.

3.  Statements by the [plaintiff] and Gordon Broyles about the alleged employment are highly inconsistent and, therefore, lack probative value.

4.  A preponderance of the credible evidence of record has failed to establish that an employer-employee relationship existed between the [plaintiff] and Gorden Broyles during the period of May 1972 through June 10, 1977, or at any other time.

5.  The evidence does not establish that the [plaintiff] should be credited with additional quarters of coverage.

6.  For any 40–quarter period ending in or after the quarter in which she alleged the onset of disability (the quarter ending June 30, 1977), the [plaintiff] lacks the necessary 20 quarters of coverage to establish insured status for Social Security disability purposes.

7.  The [plaintiff] does not have one quarter of coverage for each year after 1950 up to the year in which she alleges disability. Therefore, she is not fully insured.

8.  The evidence does not establish that the [plaintiff] has the requisite insured status for entitlement to a period of disability or to disability insurance benefits.

9.  Since  *   *   *  the [plaintiff] is not insured under the Act, it is unnecessary to make a determination on the question of disability.

  *   *   *   *   *   *

Such findings by the Secretary are conclusive if they are supported by substantial evidence in this record. *Wokojance v. Weinberger*, C.A. 6th (1975), 513 F.2d 210, 212[3]. This Court may only determine whether the Secretary's decision is based upon such evidence. *LeMaster v. Weinberger*, C.A. 6th (1976), 533 F.2d 337, 339[1]; *Ingram v. Richardson*, C.A. 6th (1972), 471 F.2d 1268, 1271[4]. As has been stated:

   *   *   *  We have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. Nation-*

---

* The plaintiff failed to make a timely response to such motion and, thus, is deemed to have waived any opposition thereto. Local Rules 12(b), 11(f).

al Labor Relations Board [1938], 305 U.S. 197, 229, [59 S.Ct. 206, 216], [83 L.Ed. 126]. "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Board v. Columbian Enameling & Stamping Co., [1939] 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, 665. * * * Consolo v. Federal Maritime Com. (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 2671, 16 L.Ed.2d 131, 140–141[9].

The plaintiff is a 64-year old woman who completed, at most, the 3rd grade of school. Her Social Security Administration earnings records show that she received 4 quarters of coverage as follows: June, 1943, June and December, 1944, and March 1945. Although Mrs. Broyles had some additional earnings posted in other calendar quarters, she did not have the required $50 per quarter needed for her to be credited with a quarter of coverage. 42 U.S.C. § 413(a).

The record contains written statements given by the plaintiff, her husband's cousin, Mr. Gordon Broyles, and others. The plaintiff Mrs. Broyles stated on a domestic-service questionnaire on June 29, 1977 that she had performed domestic work for Mr. Gordon Broyles for a period of approximately 5 years between May, 1972, and June, 1977. Her duties included sweeping, mopping, washing and ironing clothes, making beds and doing some cooking. Mrs. Broyles stated that she worked approximately 2 hours a day, 5 days a week, and that she stopped work when she became unable to work in June, 1977. She stated that she was paid $10 per week with payment usually being made in supplies rather than cash. The plaintiff stated further that she had no specific hours and got no instructions from Mr. Broyles as to the proper performance of her duties. She stated that she owned the land upon which Mr. Broyles lived and had allowed him to build a house on it.

Mr. Gordon Broyles also filed a domestic-services questionnaire on June 29, 1977, in which he noted that the plaintiff only came in 1 day a week for 8 hours, at her choice, and that he fended for himself the rest of the week. Mr. Broyles was uncertain as to the date that the arrangement had begun and stated further that he had paid the plaintiff $10 per week for her services, usually by cash or check. He stated that he had not filed Social Security returns because he did not know it was required. Mr. Broyles asserted in another undated statement that the plaintiff had begun her work for him in May, 1972; that, while she worked only 1 day a week, she was at his house at other times because she had a key and lives next door; that he paid her $10 per week in cash or check but occasionally purchased additional items for her such as gas and other supplies; and that he did not understand why Mrs. Broyles had said he paid her with supplies in lieu of cash, since that was untrue.

The plaintiff stated on July 1, 1977, that she remembered only one check Mr. Broyles had given her, and that most of her reimbursements were in supplies because Mr. Broyles was afraid that she would give money to her son.

Mrs. John P. Turner reported in an undated statement that Mr. Broyles had worked for her several times since 1954, and that there had been occasions on which the plaintiff came to her place asking Mr. Broyles for the money he owed her for housekeeping. Mrs. Turner stated also that on one such occasion she made out a check payable to the order of the plaintiff at Mr. Broyles' request. Mrs. Turner stated that at times she gave the plaintiff money and deducted these sums from her payments to Mr. Broyles. Mrs. Belvira Park provided a written statement of August 1, 1977 in which she reported that Mr. Broyles had worked for her since 1973 on an intermittent basis. She stated that Mr. Broyles would pay the plaintiff money and, on occasions when he did not have it, she would pay the plaintiff and deduct it from her payments to Mr. Broyles. Mr. Broyles stated on September 1, 1977 that he had paid the plaintiff $10 or more per week for domestic work for at least 5 years.

The plaintiff stated on November 3, 1977 that Mr. Broyles stayed with her for approximately a year after he had been released from a mental institution. She allowed Mr. Broyles to live, and eventually build himself a house, on her property. She stated also that she had worked for Mr. Broyles for approximately 6 years, and that she had told him that he would have to pay her $10 a week " * * * because he was drinking-up all his money. * * * " She also noted that she had worked at some other places, but admitted that she had no proof of her earnings.

Mr. Broyles gave a further statement on November 28, 1977 in which he stated that he had lived on the plaintiff's property for about 10 years, and that she had helped him with his housework when he first moved on her property. He stated that the plaintiff was currently working for him and that he paid her what he could afford, but that she worked even when he could not afford to pay her.

The plaintiff reported on June 30, 1978 that she had filed 21 domestic-employee tax returns in November, 1977, in order to obtain the quarters needed for insured status, and that she and Mr. Broyles had paid the necessary taxes at that time. Photocopies of several checks written by Mr. Broyles to the plaintiff appear in the record. These are dated July 6, 1976, July 7, 1976, December, 1976, March 20, 1974, and July 1, 1977. All but the December, 1976 check stated that they were for housework. Finally, the record contains photocopies of the quarterly tax-returns filed by Mr. Broyles on November 2, 1977 showing that he had paid wages to the plaintiff.

At the administrative hearing herein, Mrs. Broyles testified that she had known Mr. Broyles for approximately 20 years, and that they were and had been good friends. She stated that she started working for Mr. Broyles a number of years ago but that he only started paying her about 5 years ago, even though she was doing the same services that she had been doing previously. She was indefinite in describing the other persons for whom she claimed to have worked for the past 5 years. She stated that she was no longer able to work for Mr. Broyles because she was disabled.

The plaintiff's sister, Ms. Bonnie Reynolds, testified at the hearing and generally corroborated the plaintiff's testimony. Mrs. Reynolds testified that she knew that the plaintiff had done some work for Mr. Broyles and stated that she felt that the plaintiff worked for Broyles not only for money, but from considerations of friendship as well.

■ An individual is insured for disability insurance benefits if that person has at least 20 covered quarters in the 40-quarter period ending in the month in which the onset of the disability is alleged. *See* 42 U.S.C. § 423(c)(1)(B)(i). The plaintiff's Social Security earnings-record shows only 4 quarters of coverage since 1943, with the last one being in March, 1945. 20 C.F.R. § 404.1027(*l*) provides that the term "wages" does not include cash remuneration paid by an employer in any calendar quarter after 1954 to an employee for domestic service in a private home of the employer or other[a] services not in the course of the employer's trade or business unless the cash remuneration paid in such quarters by the employer to the employee for such service is $50 or more. In determining whether $50 or more has been paid either for domestic service in a private home of the employer or for service not in the course of the employer's trade or business, only cash remuneration for such service is taken into account. *Id.*

Mrs. Broyles contends that she was employed by Mr. Broyles in a domestic capacity between 1972 and 1977, and that this should be included in her quarters of coverage. No evidence appears in the Secretary's records of any earnings during this period.

20 C.F.R. § 404.804(b) provides that " * * * [t]he absence of an entry in the Administration's records as to the wages alleged to have been paid by an employer to an individual during any period in such year shall be presumptive evidence that no such alleged wages were paid to such individual

in such period. * * * " Thus, the absence of entries for earnings for the period 1972–1977 in the Secretary's record is evidence that no such income was derived in that time period and, additionally, creates a rebuttable presumption that no such wages were paid during that period. *See* 20 C.F.R. § 404.804(b); *Fisher v. Secretary of U. S. Dept. of Health, Ed. & Welf.*, C.A. 7th (1975), 522 F.2d 493. In order to overcome this statutory presumption, the plaintiff must have done more than merely present contradictory evidence to the effect that such wages were in fact paid; she must have presented also sufficient credible evidence "* * * to overcome the affirmative evidence of lack of requisite payment when considered in the context of the statutory presumption. * * * " *Ibid.*, 522 F.2d at 498[2].

██ The evidence herein is, as the defendant contends, "* * * wrought with inconsistencies as to [the] plaintiff's supposed employment by Mr. Broyles. * * * " Such evidence does not "* * * establish both the amount of wages paid and the time of payment. * * * " *Ibid.*, 522 F.2d at 496[1]. The Secretary and his administrative law judge, as the factfinders, had the power to weigh and evaluate the evidence and resolve the conflicts in it. *Lane v. Gardner*, C.A. 6th (1967), 374 F.2d 612, 616[2].

The Secretary found that Mrs. Broyles did not meet the special earnings requirement of the Act and thus was not entitled to disability insurance benefits. This Court's review is limited to a determination of whether his decision is supported by substantial evidence in this record. *Fisher v. Secretary of U. S. Dept. of Health, Ed. & Welf., supra*, 522 F.2d at 498. There is such substantial evidence in this record.

The pleadings and exhibits showing that the defendant Secretary is entitled to a judgment as a matter of law, the defend-

ant's motion for judgment on the pleadings hereby is GRANTED. Rule 12(c), Federal Rules of Civil Procedure. Judgment will enter, affirming the final decision herein of the defendant, Rule 58(1), Federal Rules of Civil Procedure.

## ON MOTION FOR RELIEF FROM JUDGMENT

Judgment was entered herein on June 26, 1979, affirming the final decision of the defendant Secretary which denied the plaintiff's claim for disability benefits under the Social Security Act. The plaintiff, through her present counsel, moved the Court for relief from such judgment, Rule 60(b)(1), (6), Federal Rules of Civil Procedure, on the ground that this action was commenced by her former counsel without her knowledge, consent or authority and after such counsel had been discharged by her.[1]

██ "* * * No person has the right to appear as another's attorney without the other's authority * * *." 7 Am. Jur. (2d) 203–204, Attorneys at Law, § 141. While there is said to be a rebuttable presumption that an attorney who files a suit does so with the authority of the person on whose behalf the suit is filed, *ibid.* at 204, § 142, the plaintiff has overcome any such presumption by submitting uncontroverted affidavits reflecting that her former counsel commenced this action without her authority. She made a showing also that she was prejudiced thereby, in that she did not receive the representation to which she was entitled by such counsel and, because of the judgment herein, the defendant is not inclined to reconsider administratively her claim for benefits along with the additional evidence she claims she has to offer on the issue of her status as an insured under the Social Security Act.[2]

---

1. The plaintiff had the right to terminate the relationship between herself and her attorney at any time, with or without cause. 7 Am.Jur. (2d), *supra*, at 222, § 168.

2. The basis for the denial of the claim of the plaintiff was that she had failed to establish herein that she met the special earnings requirements of the Social Security Act.

For good cause shown, the motion of the plaintiff for relief from the judgment herein of June 26, 1979 hereby is GRANTED, and she hereby is RELIEVED from such judgment. Rule 60(b)(1), (6), Federal Rules of Civil Procedure. The Court hereby ALLOWS the plaintiff 20 days herefrom within which to seek an appropriate disposition of this action.[3]

---

**3.** Relieving the plaintiff from the judgment herein does not result in the final disposition of this action; instead, it merely leaves the action in the same posture in which it was prior to the entry of such judgment. Since the plaintiff claims that the action was commenced without her authorization, it would seem that she should now seek the dismissal of such unauthorized action. *See* Rule 41(a), Federal Rules of Civil Procedure.