**In re Nellie K. ELLIS.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

June 11, 1991.

Permission to Appeal Denied by
Supreme Court Jan. 6, 1992.

Walter S. Clark, Jr., Phyllis L. Bateman, Nashville, for appellant.

Robert A. Anderson, Nashville, for appellee Guardian Ad Litem.

Donald Arkovitz, Nashville, for Nellie K. Ellis.

## OPINION

KOCH, Judge.

This appeal involves the disqualification of a lawyer in a proceeding to appoint a conservator or limited guardian for an elderly woman suffering from Alzheimer's disease. The Davidson County Probate Court disqualified the lawyer seeking to represent the woman after the woman's guardian ad litem informed the court that the lawyer's firm also represented one of the parties seeking to be appointed conservator and that this party's interests potentially differed from those of the ward. We granted the lawyer's application for a Tenn.R.App.P. 10 appeal and now affirm the probate court's disqualification order.

I.

Nellie K. Ellis is an 85–year–old widow suffering from Alzheimer's disease. Through hard work and frugality, she has amassed a sizeable personal estate valued at approximately $1,670,000. She also owns all the stock in Ellis Funeral Home, Inc., a business operated by her husband for many years prior to his death. Mrs. Ellis supports herself with the $160,000 annual income from her investments.

Mrs. Ellis has lived in an apartment above the funeral home for many years. After her husband's death in July, 1986, she asked Clyde Green, one of her husband's longtime employees, to oversee the day-to-day operations of the funeral home. She also asked Mr. Green and his wife, Imogene, to move into the funeral home and promised that she would leave them the funeral home business if they would look after her in her later years.

The Greens moved into a refurbished apartment over the funeral home in 1987. Mr. Green has continued to manage the funeral home, and Mrs. Green has been Mrs. Ellis' companion, cook, chauffeur, private secretary, and runner. Mrs. Green took over keeping the funeral home's books in 1986 when Mrs. Ellis could no longer do so and also began keeping Mrs. Ellis' personal checkbook in 1987.

On October 17, 1989, Mrs. Ellis executed a durable power of attorney giving Mrs. Green complete control over her affairs should she ever become disabled or incapacitated. She stated in the power of at-

torney that she wished Mrs. Green to serve as her conservator if she should ever need one. The document was prepared with the advice and assistance of Walter S. Clark, Jr., a lawyer who had assisted both Mr. Ellis and Mrs. Ellis with their legal affairs since the 1970's.

Mrs. Ellis was hospitalized on October 30, 1989, due to episodes of forgetfulness and confusion. She came under the care of Drs. Stephen J. D'Amico and Cynthia G. Susskind. She was diagnosed with progressive Alzheimer's disease and as having a cerebrovascular accident, transient ischemic attacks, and senile dementia with delirium. She was released from the hospital and returned home on November 5, 1989.

Mrs. Ellis was hospitalized again on January 13, 1990 after injuring her shoulder in a fall in her apartment. She required twenty-four hour care after she was released, and so Mrs. Green hired persons to stay with Mrs. Ellis and tried to activate the power of attorney. The banks, however, declined to honor the power of attorney without a physician's statement. On January 23, 1990, at Mrs. Green's request, Dr. D'Amico prepared a letter stating: "In my opinion, this patient [Mrs. Ellis] is unable to attend to her affairs or needs, being disabled and incapacitated."

At Mr. Clark's suggestion, Mrs. Green retained Dinah L. Clark, Mr. Clark's daughter and associate in practice, to prepare and file a petition under the Conservatorship Law of 1980 [Tenn.Code Ann. §§ 34–4–201, –213 (1984)]. The petition Mrs. Green filed on June 21, 1990 was signed and verified by both Mrs. Green and Mrs. Ellis. It asserted that Mrs. Ellis was "unable to care for her physical well-being" and that she was unable "to handle her financial affairs" and requested the appointment of a guardian ad litem and that Mrs. Green be appointed Mrs. Ellis' conservator.

The petition was supported by affidavits of Drs. D'Amico and Susskind, stating that Mrs. Ellis needed a guardian for her physical well-being, to handle her financial affairs, and to consent to medical treatment. Dr. D'Amico's affidavit also states:

This 84 year female was admitted to Baptist Hospital on October 20, 1989, for episodes of forgetfulness and being confused. She has been followed by this office since that time and has regressed mentally which I believe to be Dememtia of Multi Infarction type. Her family confirms the decline in mental status over the past eight months.[1]

On June 22, 1990, the probate court appointed Anne L. Russell, a Nashville lawyer, as Mrs. Ellis' guardian ad litem. Ms. Russell soon encountered resistance from Mr. Clark over access to Mrs. Ellis' business and personal papers. Eventually, she was required to obtain a court order giving her access to these records.

On July 17, 1990, five members of Mrs. Ellis' family, including her sister, two nieces, and two nephews, filed a counter-petition for the appointment of a conservator. While they agreed that Mrs. Ellis was in need of a conservator, they opposed appointing Mrs. Green, alleging under oath that the appointment would permit Mr. and Mrs. Green to engage in self-dealing with regard to the funeral home, that Mrs. Green was incapable of properly managing an estate the size of Mrs. Ellis', and that Mrs. Green had refused to give them access to Mrs. Ellis' records and had also refused to permit them to visit Mrs. Ellis in private.

Ms. Clark prepared a response to the counter-petition on behalf of both Mrs. Ellis and Mrs. Green. Contrary to the original petition, this response denied that Mrs. Ellis needed a conservator and asserted that Mrs. Ellis was "able to handle her financial affairs with the assistance and help of the original petitioner [Mrs. Green]." Like the earlier petition, the re-

---

1. We attach no legal significance to Ms. Clark's use of the wrong affidavit forms to support Mrs. Green's petition for a conservator for Mrs. Ellis. Even though these forms were prepared for use in a proceeding under the Limited Guardianship

Proceedings for Disabled Persons Law [Tenn. Code Ann. §§ 34–4–101, –116 (1984) ], they contain the information required by the Conservatorship Law of 1980. *See* Tenn.Code Ann. § 34–4–205(c).

sponse was verified and signed by both Mrs. Green and Mrs. Ellis.

On September 21, 1990, Mr. Clark entered a formal appearance in the case, claiming to be representing Mrs. Ellis at her request. The guardian ad litem and Mrs. Ellis' family opposed Mr. Clark's entry into the case. On September 27, 1990, the probate court entered an order suggesting that both Mr. Clark and Ms. Clark should withdraw from the case "due to conflict of interest."

Mr. Clark requested the probate court to reconsider its suggestion that he withdraw from the case. To support his request, he filed a long, unverified factual account of his dealings with Mrs. Ellis and her late husband. He did not, however, provide any new medical information concerning Mrs. Ellis' capacity to contract or any independent verification from Mrs. Ellis that she had requested him to represent her in these proceedings.

Mrs. Ellis' guardian ad litem and family opposed Mr. Clark's motion. On November 29, 1990, following a lengthy hearing, the probate court entered an order stating:

> The Court is further of the continuing opinion that Clark & Clark is in a position of conflict of interest and should withdraw as counsel. Upon statement to the Court by Walter Clark that he did not agree that a conflict of interest existed and he saw no reason to withdraw, the Court disqualified Walter Clark from the case. Further, the Court orders that Walter Clark shall not in any manner interfere with the conduct of this case by the guardian *ad litem* including, but not limited to, addressing such matters with Nellie Ellis, or having another attorney to represent Mrs. Ellis in his stead.

This court granted Mr. Clark's application for an extraordinary appeal and also granted his request for a stay of the pending competency hearing. All interested par-

ties[2] presented their oral arguments to the court on May 29, 1991.

## II.

We did not grant this extraordinary appeal to determine whether Mrs. Ellis has the right to legal representation in these proceedings or whether she has the right to a prompt adjudication of her competency. She has these rights without question. Our purpose was to review the probate court's decision to disqualify Mr. Clark as Mrs. Ellis' lawyer and to remove him from the case.

A trial court has a broad range of options available to insure that its proceedings are fair both in appearance and in fact. Disqualifying an attorney is the most drastic. *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983); *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145, 147–48 (1990). It invariably causes delay, increases costs, and deprives parties of counsel of their choice. Courts should, therefore, disqualify counsel with considerable reluctance and only when no other practical alternative exists. *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979).

Trial courts are responsible for controlling the conduct of the lawyers appearing before them. Their authority is necessarily broad, and thus, their decisions concerning the conduct of their court's business are entitled to appellate deference. It follows that we should review decisions with regard to lawyer's conduct in open court using an "abuse of discretion standard." *Norton v. Tallahassee Memorial Hosp.*, 700 F.2d 617, 619 (11th Cir.1983); *see also Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964).

The same appellate deference is not appropriate when the facts are undisputed and the conduct at issue does not directly

2. Mrs. Ellis was represented on appeal by Donald Arkovitz. After the probate court disqualified Mr. Clark, it determined that Mrs. Ellis should have independent representation and appointed Mr. Arkovitz to represent her in accordance with Tenn.Code Ann. § 34–4–106(a). In response to the court's questions during oral argument, Mr. Arkovitz stated that he had discussed the proceedings with Mrs. Ellis and that she had not insisted that she was competent to manage her own affairs. He also stated that she had not objected to the proceedings to appoint a conservator for her or that she desired Mr. Clark to represent her in these proceedings.

involve conduct in open court. Trial courts enjoy no particular functional advantage over appellate courts in formulating and applying the ethical principles governing the attorney-client relationship. *See United States v. Collins*, 920 F.2d 619, 628 (10th Cir.1990); *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 188 (7th Cir.1979); *Aetna Casualty & Sur. Co. v. United States*, 570 F.2d 1197, 1200 (4th Cir.1978). Accordingly, we will review trial courts' decisions to disqualify a lawyer based on undisputed facts and conduct not taking place in court using Tenn.R.App.P. 13(d)'s standard of review.

### III.

Mr. Clark's disqualification implicates two of the most fundamental aspects of the attorney-client relationship—a lawyer's authority to represent a client and a client's right to be represented by a lawyer whose loyalty is to the client alone. Since Mr. Clark has not demonstrated that he has been duly retained to represent Mrs. Ellis in this proceeding, we need not determine at this time whether his conduct is contrary to the Code of Professional Responsibility.[3]

### A.

■ A lawyer purporting to represent a client normally need only claim the status because of the presumption that a lawyer has the authority to represent the person for whom he or she appears. *Jones v. Williamson*, 45 Tenn. (5 Cold.) 371, 379–80 (1868); C. Wolfram, *Modern Legal Ethics* § 4.2, at 150 (1986). The presumption is, however, rebuttable. *Broyles v. Califano*, 495 F.Supp. 4, 8 (E.D.Tenn.1979); *Sam Daily Realty, Inc. v. Western Pacific Corp.*, 4 Haw.App. 577, 671 P.2d 450, 453 (1983); *Kelly v. Murphy*, 630 S.W.2d 759, 761 (Tex.Ct.App.1982).

■ When a lawyer's authority to represent a client is questioned, either by another party or by the court, the attorney must demonstrate his or her authority. *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319, 47 S.Ct. 361, 362, 71 L.Ed. 658 (1927); *Jones v. Williamson*, 45 Tenn. (5 Cold.) 371, 379–80 (1868); *Ex parte Gillespie*, 11 Tenn. (3 Yer.) 325, 325–26 (1832); *Cooper v. Little*, 29 Tenn.App. 685, 690, 201 S.W.2d 210, 212 (1946). Demonstrating authority is not difficult. The Tennessee Supreme Court has pointed out that

> [A]ny written communication, by letter or otherwise, giving the authority, or recognizing it, has been held, to be sufficient, as would any parole proof of the same fact, as all the court asks ... is such proof as will raise a reasonable presumption of the existence of the authority.

*Rogers v. Park's Lessees*, 23 Tenn. (4 Hum.) 480, 482 (1844).

### B.

■ The conservatorship proceedings were already well under way when Mr. Clark attempted to enter the case as Mrs. Ellis' lawyer. By that time, there was already substantial doubt concerning Mrs. Ellis' competency and her capacity to enter into contracts. The probate court had already received a verified petition, supported by the affidavits of Mrs. Ellis' doctors, stating that Mrs. Ellis was not "able to handle her financial affairs" and had already appointed a guardian ad litem for her.

Mr. Clark attempted to enter the case without consulting Mrs. Ellis' guardian. In the face of objections by the guardian and Mrs. Ellis' family, he made no effort to present evidence, other than his own self-serving assertions, that Mrs. Ellis was competent to retain counsel or that she had, in fact, retained him to represent her. This

---

**3.** This court may affirm a decision based on principles different from those relied on by the trial court. *Continental Casualty Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn.1986); *Duck v. Howell*, 729 S.W.2d 110, 113 (Tenn.Ct.App.1986). Tenn. R.App.P. 13(b) and 36(a) permit us to base our decision on the controlling legal principles even though they have not been cited or relied upon by either party. *Nance v. Westside Hosp.*, 750 S.W.2d 740, 744 (Tenn.1988); *City of Memphis v. IBEW, Local 1288*, 545 S.W.2d 98, 100 (Tenn. 1976).

lack of proof is fatal to Mr. Clark's position here.

The attorney-client relationship is based on contract. *See Fox v. Pollack*, 181 Cal.App.3d 954, 226 Cal.Rptr. 532, 534 (1986); *York v. Stiefel*, 109 Ill.App.3d 342, 64 Ill.Dec. 888, 440 N.E.2d 440, 445 (1982). Thus, the rules generally applicable to the formation of contracts apply to contracts for legal representation. *Hashemi v. Shack*, 609 F.Supp. 391, 393 (S.D.N.Y. 1984); *Security Bank v. Klicker*, 142 Wis.2d 289, 418 N.W.2d 27, 30 (1987).

Past representation does not necessarily give rise to a contract for future representation. Employment for one purpose does not authorize a lawyer to represent a client in new or unrelated proceedings. *Greenlaw v. Pettit*, 87 Tenn. 467, 474–75, 11 S.W. 357, 359 (1889); *Hart v. First Nat'l Bank*, 690 S.W.2d 536, 538–39 (Tenn.Ct.App.1985). Clients may also change their lawyer or alter the scope of their lawyer's authority at any time. *Spofford v. Rose*, 145 Tenn. 583, 609, 237 S.W. 68, 75–76 (1922); *Yoakley v. Hawley*, 73 Tenn. (5 Lea) 670, 673 (1880). Thus, the existence and scope of a lawyer's authority to represent a client depends on the manner in which a client retains a lawyer in a particular case. *Epps v. Washington County*, 173 Tenn. 373, 376, 117 S.W.2d 749, 750 (1938).

The formation of a contract requires the existence of parties capable of contracting. *See* 2 S. Williston, *A Treatise on the Law of Contracts* § 222 (3d ed. 1959); Restatement (Second) of Contracts § 12(1) (1979). The ability to act "with judgment and discretion" is not required in order to be able to contract. All that is required is that the party understand in a reasonable manner the nature and consequences of his or her transactions. *Seat v. McWhirter*, 93 Tenn. 542, 569, 29 S.W. 220, 227 (1894); 2 S. Williston, *A Treatise on the Law of Contracts* § 256 (3d ed. 1959); Restatement (Second) of Contracts § 15(1)(a) (1979).

The probate court is the ultimate guardian of the persons seeking its care and protection. *Hinds v. Buck*, 177 Tenn. 444, 448, 150 S.W.2d 1071, 1072 (1941). Mr. Clark's past representation of Mrs. Ellis provides no support for his claim that she had retained him to represent her in this proceeding, much less that she was capable of retaining a lawyer. The uncontradicted medical evidence shows that Mrs. Ellis' mental condition had "declined" and in June, 1990 was "chronic" and "poor." Mrs. Ellis' attending physicians stated that she required a guardian "to handle her financial affairs." The only reasonable conclusion to be drawn is that Mr. Clark cannot undertake to represent Mrs. Ellis at this stage of the proceedings because he has failed to show that she is capable of retaining counsel and that she has retained him.

### IV.

We affirm the trial court's disqualification of Mr. Clark and remand the case to enable the probate court to conduct a full and final hearing on Mrs. Ellis' competency. We also tax the costs of this appeal to Walter S. Clark, Jr. for which execution, if necessary, may issue.

If the probate court determines that Mrs. Ellis is competent and if Mrs. Ellis desires to be represented by Mr. Clark, then the court may again consider whether Mr. Clark has complied with the requirements of the Code of Professional Responsibility with regard to representing clients with potentially differing interests. If the probate court finds that Mr. Clark's conduct has not been consistent with the Code of Professional Responsibility, it may disqualify him on those grounds and send a copy of the entire court record to the Board of Professional Responsibility.[4]

TODD, P.J., and CANTRELL, J., concur.

---

4. The purpose of the Code of Professional Re-     sponsibility is to discipline lawyers who engage

in unethical conduct. *Zimmerman v. Board of Professional Responsibility,* 764 S.W.2d 757, 761 (Tenn.), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3160, 104 L.Ed.2d 1023 (1989). Possible ethical violations surfacing during court proceedings should be referred to the disciplinary machinery established by Tenn.S.Ct.R. 9. *See Williams v. Trans World Airlines, Inc.,* 588 F.Supp. 1037, 1046 n. 4 (W.D.Mo.1984).