IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 3, 2021 Session

## HENRY LEE JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 03-06997      W. Mark Ward, Judge**

_____

### No. W2020-01347-CCA-R10-PD
_____

Henry Lee Jones, Petitioner, filed a pro se petition for post-conviction relief with the assistance of the Office of the Post-Conviction Defender ("OPCD"). The post-conviction court determined that the petition stated a colorable claim and appointed the OPCD to represent Petitioner. Shortly thereafter, the effects of COVID-19 began to impact and impede the day-to-day operations of parts of the Tennessee court system. The OPCD, citing the voluminous record and inability to fully investigate potential claims because of the impact of COVID-19, sought several extensions of time in which to file an amended petition. Seven months after the OPCD was appointed to represent Petitioner, the post-conviction court removed the OPCD from representation and appointed private counsel to represent Petitioner without notice or a hearing. The OPCD sought an extraordinary appeal to this Court pursuant to Rule 10 of the Rules of Appellate Procedure. This Court granted the application and directed the parties to address the following issues: (1) "whether the post-conviction court abused its discretion in removing the [OPCD] as counsel of record;" and (2) "whether the [OPCD] has the authority to act as counsel of record for [Petitioner] in this Court." After review, we determine that the OPCD had the authority to appeal the removal and that the post-conviction court improperly removed the OPCD from the case. As a result, we reverse the judgment of the post-conviction court and remand the case for further proceedings consistent with this opinion.

**Tenn. Rule of App. P. 10 Extraordinary Appeal; Judgment of the Criminal Court Reversed and Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Justyna Garbaczewska Scalpone, Post-Conviction Defender; Deborah Y. Drew, Deputy Post-Conviction Defender; Andrew L. Harris and Kelly A. Gleason, Assistant Post-Conviction Defenders, Nashville, Tennessee, for the appellant, Henry Lee Jones.[1]

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Cody N. Brandon, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In 2003, Petitioner robbed and murdered Clarence and Lillian James in their home. *State v. Jones*, 568 S.W.3d 101, 110 (Tenn. 2019). The victims were bound and strangled before their throats were slit. *Id.* at 113-22. Petitioner stole money and jewelry and fled to Florida, where he committed an additional murder. *Id.*

Petitioner was first tried and convicted of his Tennessee crimes in 2009. He received a sentence of death. After an appeal to the Tennessee Supreme Court, Petitioner's convictions were reversed, and the matter was remanded to the trial court for a new trial. *State v. Jones*, 450 S.W.3d 866, 871 (Tenn. 2014). The convictions were reversed in part due to the trial court's error in admitting evidence of the Florida murder. *Id.* at 901.

In May of 2015, Petitioner was retried. Petitioner was again convicted and sentenced to death on four counts of first-degree murder. *Jones*, 568 S.W.3d at 124. The trial court merged the felony murder convictions into the premeditated murder convictions. *Id.* Petitioner represented himself at the retrial with the assistance of elbow counsel. *Id.*

After the retrial for the Tennessee murders, Petitioner was returned to his home state of Florida where he was convicted of homicide and sentenced to death. *Jones v. State*, 212 So. 3d 321 (Fla. 2017).[2] The modus operandi in the Florida case was substantially similar

---

[1] Based on an order from the post-conviction court, as will be made clear in this opinion, the post-conviction court appointed Claiborne Ferguson and John McNeil to represent Petitioner in September of 2020. However, the matter at issue herein was initiated by the OPCD.

[2] According to the brief filed in this Court, Petitioner's Florida counsel filed the equivalent of a petition for post-conviction relief in September of 2018. Represented by the Capital Collateral Regional Counsel, Florida's counterpart to the OPCD, Petitioner raised claims that he was incompetent to stand trial and/or represent himself. The Florida post-conviction court determined that there were reasonable grounds to proceed on the competency issue, appointed experts, and ordered a hearing on the issue. Though not confirmed, the OPCD claims that Florida proceedings were stalled due to the COVID-19 pandemic.

to that of the Tennessee case. The victim was strangled before his throat was slashed. *Id.* at 326.

On appeal of his retrial to this Court and the Tennessee Supreme Court, Petitioner's convictions and death sentences were affirmed. *State v. Henry Lee Jones*, W2015-02210-CCA-R3-DD, 2017 WL 4124164 (Tenn. Crim. App. Sept. 18, 2017); *Jones*, 568 S.W.3d at 143. Subsequently, Petitioner filed a petition for writ of certiorari in the United States Supreme Court. That petition was denied on October 7, 2019. *Jones v. Tennessee*, 140 S. Ct. 262 (2019).

On December 26, 2019, Petitioner timely filed a pro se petition for post-conviction relief in the Shelby County Criminal Court. Although not yet appointed, the OPCD assisted Petitioner in filing the petition. The petition alleged that Petitioner's convictions were: (1) based on evidence gained pursuant to an unlawful search and seizure; (2) based on a violation of the privilege against self-incrimination and the right to counsel; (3) based on the unconstitutional failure of the prosecution to disclose evidence favorable to the defense; (4) based on a violation of double jeopardy; and (5) based on an unconstitutionally selected and impaneled jury. Petitioner also alleged ineffective assistance of counsel, even though he represented himself at his second trial.

In mid-January of 2020, the post-conviction court determined that the pro se petition "just barely" presented a colorable claim, in part because the petition "contain[ed] almost no specific factual allegations." The OPCD was then appointed to represent Petitioner in the post-conviction matter, and Petitioner's execution date was stayed by the post-conviction court.

The post-conviction court ordered the OPCD to file an amended petition within 30 days. A motion requesting additional time to file an amended petition appears in a supplemental technical record. The motion was signed by the OPCD on February 11, 2020, and stamped filed by the trial court on February 18. For reasons that are unclear from the record, the motion was never heard by the trial court.[3]

---

[3] There is conflicting evidence in the record regarding why the motion for extension of time was never heard. The OPCD attached to its brief a typed note from the post-conviction court's courtroom clerk to a paralegal asking to "set the hearing for March 27, 2020" per the post-conviction court's instructions. Of course, "documents attached to an appellate brief but not included in the record on appeal cannot be considered by this [C]ourt as part of the record on appeal." *Grover L. Dunigan v. State*, No. E2005-01574-CCA-R3-PC, 2006 WL 433699, at *3 (Tenn. Crim. App. Feb. 23, 2006), *perm. app. denied* (Tenn. June 26, 2006). At a later hearing on the matter, the post-conviction court denied ever receiving a request for the extension, claiming he was "ignored."

Shortly thereafter, the announcement of a global pandemic began affecting the entire world, including Tennessee courts. On March 13, 2020, the Tennessee Supreme Court suspended in-person court proceedings by declaring a state of emergency for the Judicial Branch of Tennessee government as a result of the COVID-19 pandemic. Several more orders were filed by the Tennessee Supreme Court extending the provisions of the initial order.

On June 5, 2020, the post-conviction court held a video hearing on the matter to ascertain why the OPCD had not filed an amended petition. At the hearing, counsel from the OPCD explained that the entire office had been working remotely since mid-March and was continuing to do so "as long as the CDC recommends, advises social distancing." Citing the voluminous nature of the record and the "current public health crisis" counsel explained they were not ready to file an amended petition. Counsel informed the post-conviction court that no visits "at all" were being permitted to the jail and that investigators were prohibited from travel.

The post-conviction court acknowledged that the OPCD was ordered to file an amended petition within 30 days of January 15 and "six months later" nothing had been filed. The OPCD explained that based on current restrictions it was "difficult to predict" when an amended petition might be ready for filing.

The post-conviction court maintained the OPCD failed to file a motion for an extension of time and insisted that the court's order to file an amended petition "got ignored." Counsel apologized and accepted responsibility for failing to file an extension. The post-conviction court noted that the original petition was really "about 20 pages of legal argument" without "factual allegations whatsoever."

The OPCD claimed to be "working as diligently as possible[;]" pointing to the "size and scope of the case" including "over 200 witnesses" and some "115,000 pages" of transcript not including the "300 gigabytes that [it] received from post-conviction counsel in Florida." Counsel from the OPCD stated he had never in his 18 years of practice "had a capital post-conviction case quite this large."

The post-conviction court noted that the "30 days [to file an amended petition] ran before the global pandemic hit." After initially apologizing for failing to request an extension, counsel explained to the post-conviction court that in "reviewing the digital case file" it appeared that there was a motion for extension of time filed in February ("the February 18, 2020 Motion"). The post-conviction court stated that the motion was never brought to the attention of the court. The post-conviction court noted the "unusual situation" and opted to give the OPCD "more time" even though "COVID occurred long after [the OPCD] offices ha[d] been working on [the petition that was] almost frivolous."

- 4 -

The OPCD ultimately agreed to file an amended petition within 90 days if the trial court ordered them to do so, all the while insisting that an investigation would not be and could not be completed at that time with current restrictions in place. The post-conviction court told the OPCD it was "time to get busy" and entered an amended preliminary order, ordering the OPCD to file an amended petition by September 8, 2020.

On August 14, 2020, the OPCD filed a motion seeking another extension of time to file an amended petition. The motion suggested that the post-conviction court pick a "viable date in 2021" due to suspension of "in-office work and case related travel" as a result of COVID-19. The OPCD argued that if the post-conviction court failed to extend the time for filing it would be "forced to choose between adequately pursuing [its] client's interests" and placing the lives of the people involved at a risk of exposure to COVID-19. The OPCD attached several documents to its motion, including its own "COVID-19 Field Work Policies and Procedures," an order from the Tennessee Supreme Court cancelling the in-person administration of the July 2020 Bar Examination, an affidavit from Dr. David M. Aronoff, Director of the Division of Infectious Diseases at Vanderbilt University, and other supporting documents that painted a dire picture of the impact of COVID-19. The State opposed the motion for extension of time.

Five days before the September 8, 2020 extension deadline, the post-conviction court held a September 3, 2020 hearing by Zoom.[4] The OPCD argued that COVID-19 was "still a rapidly unfolding situation." The OPCD explained they were still in the process of accumulating records necessary for the proper amendment of the pro se petition and noted that they were still not permitted to "do field investigation" as a result of the ongoing pandemic. The OPCD had not been able to see Petitioner since March 2020 because of a lock-down in the prison. Just a few days prior to the hearing, the governor extended the State of Emergency through September 30, 2020. Counsel for the OPCD also explained to the post-conviction court that one of the lawyers on the case was leaving the OPCD for the Public Defender's Office in the coming weeks. Counsel expressed concern about filing an amended petition without fully investigating all the potential issues. Counsel for the OPCD did not request or suggest that the OPCD be relieved from representing Petitioner. The post-conviction court stated that it would review the matter and issue a ruling in the next few days but informed the OPCD that they did not have to file the amended petition by the September 8 deadline.

On September 11, 2020, the post-conviction court entered an order relieving the OPCD as counsel of record and substituting two private attorneys to represent Petitioner

---

[4] Zoom is a video conferencing platform that allows individuals to join meetings via a webcam or a phone.

on post-conviction. In the order, the post-conviction court recapped the procedural history of the post-conviction proceedings. Citing Tennessee Supreme Court Rule 13, section 1(e)(4)(A) governing the appointment of counsel for indigent defendants, the post-conviction court found "that appointment of local counsel to represent the Petitioner is necessary in this case." The post-conviction court pointed to the COVID-19 pandemic, the "work policies and limitations implemented by the [OPCD]," and the physical location of the lawyers relative to the majority of the witnesses as barriers to getting "this case moving." The post-conviction court stated Petitioner was entitled to counsel who was not "hamstrung" by office policies."

After removal by the post-conviction court, the OPCD wasted no time filing an application for permission to appeal to this Court. Forgoing a Rule 9 application with the post-conviction court for permission to Appeal, the OPCD filed an application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 10, directly to this Court. On September 25, 2020, the OPCD filed a motion alleging that no one, including Petitioner, requested dismissal of counsel and that there was no hearing or notice of the removal prior to the issuance of the post-conviction court's order substituting counsel. The OPCD argued that the post-conviction court abused its discretion and asked this Court to stay the proceedings in the lower court, vacate the post-conviction court's order dismissing the OPCD, disqualify the post-conviction court from further presiding over the matter, and remand the case to Shelby County for further proceedings. Attached to the petition was a statement from Petitioner indicating his desire for the OPCD to represent him in the post-conviction matter.[5] The State opposed the grant of the Rule 10 application, arguing that the post-conviction court did not abuse its discretion and that any request for recusal was waived.

This Court, with the dissent of one judge on the panel, granted the Rule 10 application "on the limited issue of the removal of counsel." This Court agreed with the State that the issue of the recusal of the post-conviction judge was not a proper issue for the extraordinary appeal. The post-conviction proceedings were stayed pending this appeal. The order from this Court granting the Rule 10 application ordered the parties to address the following issues on appeal: "whether the post-conviction court abused its discretion in removing the [OPCD] as counsel of record" and "whether the [OPCD] has the authority to act as counsel of record for the [Petitioner] in this Court."

---

[5] During the pendency of this appeal, Petitioner filed two pro se motions to have the OPCD removed from the case. Because it has long been the rule that an appellant may not be represented by counsel in this Court and simultaneously proceed pro se, this Court denied the motions. *See State v. Davis*, 141 S.W.3d 600, 615 n.12 (Tenn. 2004); *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976). Certainly, the post-conviction court is not subject to this court's holding on this issue, should Petitioner make this request upon remand.

*Analysis*

On appeal, the OPCD argues that it has authority to act as counsel of record in this Court by virtue of precedent and statutory mandate. Further, the OPCD argues that the post-conviction court "implemented a 'drastic remedy' for a nonexistent problem, thereby violating due process and abusing its discretion." The State disagrees, arguing that this Court has never addressed whether removed counsel can participate in an appeal challenging their own removal. The State further argues that this Court should not permit the OPCD to continue to represent Petitioner and should dismiss the appeal outright. Lastly, the State insists that the trial court properly exercised its discretion to remove the OPCD because of "internal policies [that] rendered [the division] unable to provide full representation to [Petitioner] in a timely fashion."

*Authority of the OPCD to Act for Petitioner*

This case was initiated when Petitioner filed a pro se petition for post-conviction relief with the assistance of the OPCD. Once the post-conviction court appointed the OPCD to represent Petitioner, they were statutorily obligated to act as counsel of record for Petitioner. The OPCD was created by the legislature to "provide for the representation of any person convicted and sentenced to death in this state who is unable to secure counsel due to indigence." T.C.A. § 40-30-202(a).[6] Representation of capital defendants is statutorily contemplated by the statutes creating the OPCD "absent an ethical impropriety." *Kevin Burns v. State*, No. W2000-02871-CCA-R9-PD, 2001 WL 912817, at *1 (Tenn. Crim. App. Aug. 9. 2001), *no perm. app. filed*.

Here, when the post-conviction court removed the OPCD from representation, the OPCD filed a motion for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure Rule 10. That rule provides:

> An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of *interlocutory orders* of a lower court *from which an appeal lies* to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as

---

[6] A prior version of this act was formerly found at Tennessee Code Annotated section 40-30-301, *et seq*., and known as the Post-Conviction Defender Commission Act. It was renumbered in 2011 as Tennessee Code Annotated section 40-30-201, *et seq*., and titled as the Post-Conviction Defender Oversight Commission Act of 2011.

otherwise provided in these rules.  The appellate court may issue whatever order is necessary to implement review under this rule.

Tenn. R. App. P. 10(a) (emphasis added).  The Tennessee Supreme Court has recognized that "[u]nless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990); s*ee also Ruff v. Raleigh Assembly of God Church, Inc.*, 241 S.W.3d 876, 877 at n.1 (Tenn. Ct. App. 2007).

In our view, an order removing counsel is, by its very nature, an interlocutory order, properly reviewable by this Court on grant of an application for permission to appeal pursuant to Rule 10, and is "necessary for a complete determination of the issue on appeal." As a result, we determine that the OPCD, in the unique posture of this case, and by virtue of its statutorily mandated exclusive function and duties, has the authority to act as counsel of record for Petitioner in this Court on the limited issue of whether the post-conviction court abused its discretion in removing the OPCD as counsel.  *See* T.C.A. §§ 40-30-205(g), -30-206(a)

This decision is not unprecedented.  The OPCD cites several applicable cases in its brief in which either interlocutory appeals or extraordinary appeals provided the basis for appeal that we viewed as notable in making our decision herein.  *See, e.g., Reid v. State*, 197 S.W.3d 694 (Tenn. 2006) (granting interlocutory appeal to determine proper procedure to determine competency to proceed on post-conviction); *Nikolaus Johnson v. State*, No. E2016-01660-CCA-R3-PD, 2018 WL 2203241, at *1 (Tenn. Crim. App. May 14, 2018) (granting interlocutory appeal to determine a matter of first impression of whether Petitioner was required to provide reciprocal discovery to the State), *no perm. app. filed*; *Michael Dale Rimmer v. State*, No. W2009-02371-SC-S09-PD (Tenn. Sept. 24, 2010) (ORDER) (granting Rule 11 application for permission to appeal after the denial of interlocutory appeal of disqualification of district attorney and remanding for an evidentiary hearing on the disqualification); *Paul Dennis Reid v. State*, No. M2009-00568-CCA-R10-PD (Apr. 29, 2009) (ORDER) (granting extraordinary appeal of disqualification of an OPCD attorney, vacating the trial court's disqualification order, and authorizing attorney to participate in defendant's appeal); *State v. Daniel Andrew Decker*, No. E2003-00922-CCA-R10-CD, 2004 WL 587641 (Tenn. Crim. App. Mar. 25, 2004) (finding in a Rule 10 appeal filed by removed counsel that the trial court did not abuse its discretion in removing District Public Defender from case where attorney/client relationship was not well-established, was not the lead counsel, and involved fairly uncontested issues with no discussion of whether jurisdiction or authority of counsel to file action was proper), *no perm. app. filed*.

- 8 -

In our view, in this case involving a petitioner sentenced to the death penalty, who has received statutorily appointed counsel from the OPCD, the appointed counsel can participate in an appeal of their removal via an extraordinary appeal under Tennessee Rule of Appellate Procedure 10. This is especially so when, as here, the removal of appointed counsel was neither requested nor sought by anyone.

## Removal of the OPCD

Now that we have determined that the matter initiated by the OPCD on behalf of Petitioner is properly before this Court, we must determine whether the trial court abused its discretion in removing the OPCD as counsel of record. Though the State argues that there are no Tennessee cases addressing this issue, we find several cases with similar procedural posture and issues to be instructive.

We begin, however, with a brief summary of the law. Because this is a post-conviction proceeding, it is somewhat different from a direct appeal from a criminal conviction. The scope of the Due Process Clause does not extend to post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554-55 (1987). Moreover, "the opportunity to collaterally attack constitutional violations occurring during the conviction process is not a fundamental right entitled to heightened due process protection." *Burford v. State*, 845 S.W.2d 204, 207 (Tenn. 1992). While the Due Process Clause does not require the appointment of counsel in post-conviction proceedings, Tennessee has established a statutory directive to appoint post-conviction counsel to an indigent petitioner, upon stating a colorable claim. T.C.A. § 40-30-107(b)(1). "[A] state may give prisoners the assistance of counsel without requiring 'the full panoply of procedural protection that the Constitution requires be given to defendants who are in a fundamentally different position-at trial and on first appeal as of right.'" *House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995) (quoting *Finley*, 481 U.S. at 559). Because there is no constitutional right to counsel in post-conviction proceedings, "there is no constitutional right to effective assistance of counsel in post-conviction proceedings." *Id.* In the post-conviction setting, due process requires that the defendant have "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *House*, 911 S.W.2d at 711 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

We acknowledge that the disciplinary rules that define and regulate ethical requirements applicable to practicing attorneys were created by the Tennessee Supreme Court pursuant to its inherent authority. *See Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); Tenn. Sup. Ct. R. 8. In fact, it is often described as "well settled" that the "licensing and regulation of attorneys practicing law in courts of Tennessee is squarely within the inherent authority of the judicial branch of government." *Smith County Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984).

However, the "involuntary removal of any attorney is a severe limitation on a defendant's right to counsel and may be justified, if at all, only in the most flagrant circumstances of attorney misconduct or incompetence when all other judicial controls have failed." *State v. Huskey*, 82 S.W.3d 297, 311 (Tenn. Crim. App. 2002). Once counsel is appointed, a trial court can remove counsel on its own motion "on a very limited basis." *Id.* at 306. Reasons justifying removal include conflicts of interest, "objective evidence of counsel's physical incapacity to continue[,] or serious misconduct by counsel." *See Wheat v. United States*, 486 U.S. 153, 164 (1988); *Husky*, 82 S.W.3d at 309. Disqualifying an attorney from a case has been described as the "most drastic" of "options available to insure that [a court's] proceedings are fair in both appearance and in fact." *In re Ellis*, 822 S.W.2d 602, 605 (Tenn. Ct. App. 1991). Naturally, "[t]he public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force." *United States v. Burton*, 584 F.2d 485, 489 D.C. Cir. 1978). It stands to reason then that a trial court's ruling on the disqualification of counsel will be reversed only upon a showing of an abuse of discretion. *Husky*, 82 S.W.3d at 309.

The supreme court has described the abuse of discretion standard of review as follows:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the [post-conviction court] . . . or to substitute their discretion for the [post-conviction] court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a [trial] court's discretionary

decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted). Even more recently, however, the court "emphasize[d] that the abuse of discretion standard of review does not permit an appellate court to substitute its judgment for that of the trial court." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019) (citing *State v. Harbison*, 539 S.W.3d 149, 159 (Tenn. 2018)). Instructing reviewing courts not to "'second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen,'" the lower court's decision should be affirmed if the reviewing court determines that "reasonable minds can disagree with the propriety of the decision." *McCaleb*, 582 S.W.3d at 186 (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999); *Harbison*, 539 S.W.3d at 159).

Here, the post-conviction court removed the OPCD from the case, citing Tennessee Supreme Court Rule 13, section (1)(e)(4)(A). That section states:

When appointing counsel for an indigent defendant pursuant to section 1(e)(3), the court shall appoint the district public defender's office, the state post-conviction defender's office, or other attorneys employed by the state for indigent defense (herein "public defender") if qualified pursuant to this rule and no conflict of interest exists, unless in the sound discretion of the trial judge appointment of other counsel is necessary. Appointment of public defenders shall be subject to the limitations of Tennessee Code Annotated sections 8-14-201 et seq.

We find three cases from this Court to be beneficial in our resolution of the issue on appeal – whether the post-conviction court abused its discretion in removing the OPCD from representation of Petitioner, a capital defendant. First, in *Huskey*, this Court considered in an extraordinary appeal "whether and under what circumstances a trial court may remove counsel, over the objection of counsel and the defendant, once the adversary proceedings have begun." 82 S.W.3d at 306. The defendant in *Huskey* was charged with the rape and murder of several prostitutes in the Knoxville area in three separate cases. *Id*. at 302. The same attorney had represented the defendant for some ten years in complex and protracted litigation. One of the trials resulted in a mistrial, and there were numerous appeals to both this Court and the Tennessee Supreme Court. The trial court deemed the attorney too overzealous, and removed him from representation sua sponte without a hearing or prior warning of the court's concerns. The removal was based primarily on the

- 11 -

filing of numerous baseless motions that were creating an undue burden on the court. *Id.* In an appeal where the removed attorney represented the interests of the defendant, this Court determined that the facts and circumstances of the particular case, specifically the length of the relationship, the complicated nature of the proceedings, and the drastic measure taken by the trial court without a hearing or notice amounted to an abuse of discretion. *Id.* at 311. As a result, the matter was vacated and remanded to the trial court. *Id.*

Second, in another extraordinary appeal, *Daniel Andrew Decker*, this Court determined that the trial court did not abuse its discretion in removing the District Public Defender from representing a defendant. In *Daniel Andrew Decker*, the defendant was a juvenile charged with the murder of his grandmother. 2004 WL 587641, at *1. One attorney from the Public Defender's Office was appointed to represent the defendant prior to his indictment on first degree murder charges. After the matter was transferred from juvenile court to circuit court and an indictment was issued, a second attorney from the Public Defender's Office was appointed. The case was continued. After the continuance, the assistant public defender filed for another continuance on the basis that the lead attorney appointed to the case had been called to active military duty. The State opposed the motion. The trial court would not agree to the continuance of six months proposed by the assistant public defender but agreed to give the Public Defender's Office a little more time. The attorney informed the trial court that she did not contact her mitigation expert prior to the hearing on the continuance and that she was overburdened by a heavy caseload. The trial court suggested she ask for help from some of the other attorneys in the Public Defender's Office. *Id.* at *2. At a hearing on the continuance, the attorney submitted an affidavit from the expert stating the basis for the continuance. The trial court ordered the expert to appear, finding that an affidavit was "insufficient to warrant a delay." *Id.* The attorney sought an interlocutory appeal to determine whether the trial court could require the expert to appear at an adversarial proceeding. The trial court consented to the interlocutory appeal, but the attorney failed to file the Rule 9 order within the time frame set by the trial court. As a result, the trial court removed the Public Defender's Office from the case and appointed private counsel. In the removal order, the trial court alleged that the attorney was too busy to be "competent and effective," made material misrepresentations to the court, and instructed the expert to give priority to other cases causing undue delay to the defendant's case. *Id.* at *4. This Court distinguished *Daniel Andrew Decker* from *Huskey*, noting that in *Daniel Andrew Decker*, the length of the attorney-client relationship was less than one year, counsel seeking the extension was not the lead attorney on the case, and the issues in the case were not overly complex. *Id.* at *6. Moreover, the panel pointed to the attorney's misrepresentations to the trial court in seeking a delay rather than her actual "approach to litigation" as the primary reason for the removal. *Id.* at *7. The Court also noted the attorney's own admission that "she had been ineffective in the case because she was

overworked" in determining that the trial court appropriately removed the Public Defender's Office. *Id.*

The third case, *Kevin Burns v. State*, No. W2000-02871-CCA-R9-PC, 2001 WL 912817, at *1 (Tenn. Crim. App. Aug. 9, 2001), *no perm. app. filed*, is the only case of the three that arises from a post-conviction petition. In *Kevin Burns*, like the case herein, the petitioner was convicted of and sentenced to death. *State v. Burns*, 979 S.W.2d 276 (Tenn. 1998). The petitioner filed a post-conviction petition with the help of the OPCD. The State sought to disqualify the OPCD from representation because one of the members of the Post-Conviction Defender Commission was related to the victim of the crime. The post-conviction court held a hearing on the motion to disqualify at which the member of the commission testified about her relationship with a relative of the victim. The petitioner filed an affidavit indicating his desire for continuing his representation by the OPCD despite the perceived conflict. The post-conviction court determined that there was both an "appearance" of a conflict and an actual conflict which required disqualification and could not be waived by the petitioner. *Id.* at *3. Acknowledging that the petitioner was entitled to conflict-free counsel, this Court determined that there was no actual conflict because there was no indication that the professional judgment of the OPCD would be affected by the relationship between the member of the commission and the family of the victim. This Court also noted that the OPCD was statutorily obligated to provide representation to the petitioner, had been representing the petitioner for an extended period of time, and that the petitioner had expressed a desire to continue working with the OPCD. Cognizant that this was a death penalty case and determining that an affidavit was not sufficient to waive a potential conflict of interest, this Court determined that the trial court improperly removed the OPCD from representation and remanded the matter to the trial court for appointment of independent counsel to advise the petitioner about the waiver of the potential conflict. *Id.* at *7.

> This is a death penalty case which will be closely scrutinized by the courts of this state and perhaps the federal courts as well. However, we also recognize that the statute contemplates representation by the [O]PCD absent an ethical impropriety. Certainly, the [O]PCD is not the only counsel who can provide competent representation of the indigent petitioner. Nevertheless, the [O]PCD was specifically created to provide specialized knowledge and competent representation in death penalty cases. Although the indigent petitioner is not entitled to counsel of his choice, his relationship with his appointed counsel is relevant to our evaluation as to whether disqualification is the only "drastic remedy" available to purge the taint of any appearance of impropriety. *See Clinard*, 46 S.W.3d at 187, 2001 WL 530834, at *7; *see also Morris v. Slappy*, 461 U.S. 1, 23, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983) (Brennan, J., concurring) (suggesting that the

relationship with appointed counsel should be considered in determining whether continued representation is possible).

*Kevin Burns*, 2001 WL 912817, at *6.

Here, unlike *Huskey*, *Kevin Burns*, or *Daniel Andrew Decker*, the post-conviction court did not disqualify the OPCD on the basis of physical incapacity, overzealous representation, incompetence, conflict of interest, misrepresentations made to the court, or a breakdown in the attorney-client relationship. The post-conviction court disqualified the OPCD because the case was not "moving" forward. The post-conviction court was not swayed by the OPCD's internal policies and procedures regarding COVID-19, mandates from the Governor of the State of Tennessee actually requiring people to stay at home, and orders from the Tennessee Supreme Court amending court procedures and policies due to COVID-19.

In our view, the post-conviction court abused its discretion in removing the OPCD from representation by reaching "'a decision which [wa]s against logic or reasoning that cause[d] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)). There was no hearing at which the OPCD was given the chance to fully elucidate the reasons for the delays and Petitioner was never asked if he was unsatisfied with the representation. Petitioner had a good relationship with the OPCD even despite his history of insisting on self-representation. The post-conviction court did not base the disqualification on a violation of the rules of professional conduct or an appearance of impropriety. *Clinard*, 46 S.W.3d at 187. Moreover, there was no conflict of interest with the OPCD's representation of Petitioner. For those reasons, the ruling of the trial court is reversed and remanded. We recognize that during the delay of over one year while this case was pending on appeal, restrictions due to COVID-19 have been relaxed.

The OPCD was created by our legislature to represent indigent capital defendants seeking post-conviction relief. *See* T.C.A. §§ 40-30-202(a) and 205(g). The legislative mandate in creating the OPCD was, in part, so that "legal proceedings to challenge [that] conviction and sentence may be commenced in a timely manner [ ] so as to assure the people of this state that the judgments of its courts may be regarded with the finality to which they are entitled in the interest of justice." T.C.A. § 40-30-202(a). To that end, and as most correctly noted by the post-conviction court to the OPCD, "it is time to get busy."

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is reversed, the OPCD is reinstated as counsel of record for Petitioner, and the matter is remanded to the post-conviction court for further efficient proceedings.


_____
TIMOTHY L. EASTER, JUDGE